

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-357-CR

BRAD BRIDGES                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Brad Bridges of felony driving while intoxicated (DWI).  He pled true to the enhancement paragraph, and the jury assessed his punishment at sixteen years' confinement.  The trial court sentenced him accordingly.  In five issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction, that the trial court erred by

---

[1] ... *See* Tex. R. App. P. 47.4.

admitting extraneous offense evidence at punishment, that the trial court erred by allowing improper impeachment of a witness, and that he was denied his right to a speedy trial. Because we hold that the evidence is legally and factually sufficient and that the trial court did not err, we affirm the trial court's judgment.

In his fourth issue, Appellant contends that the evidence is legally insufficient to support his conviction. Appellant does not challenge the evidence elevating the offense to a felony. A person commits DWI when he operates a vehicle in a public place while intoxicated.[2] Appellant was indicted for committing DWI with intoxication defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances, or any other substance into the body."[3]

At around 11 p.m. on September 16, 2006, Officer Lisa Martin of the Denton Police Department observed a red car make a wide right turn from Hickory onto Locust, a one-way street with three driving lanes and parking spaces on each side of the street, crossing over into designated parking spaces on the left side of the street. The red car then moved into the left lane.

---

[2] ... *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).

[3] ... *See id.* § 49.01(2)(A).

2

Because she believed that making such a wide turn could be an indication of intoxication, Officer Martin decided to follow the red car. Officer Martin testified that at the Locust and McKinney intersection stoplight, the right lane is a "right turn only" lane, the middle lane is for traffic going straight only, and the traffic in the left lane can go straight or turn left. She also testified that the road has "a shoulder area" to the left of the left lane, which "is kind of a parking area where people park their cars, but it's wide open. It's like a large — it almost — if you're there, it looks like this lane is, like huge, is how this lane looks." We note that the videotape of the intersection does not make clear that the far left lane was for parking only at that particular section of the street, but certainly as the red car proceeded to that intersection, cars can be seen parked diagonally to the left of the left lane. A truck was stopped at the red light in the left lane. The red car stopped behind the truck but then moved without signaling into the shoulder area to the left of the left lane and stopped with its rear wheels on the "stop" line of the intersection.

The red car turned left without signaling onto McKinney, and after turning, briefly straddled the line dividing two lanes of westbound traffic. The red car then moved into the right lane. Officer Martin testified that she saw the red car then twice cross over the lane divider as the road curved. The red car then approached the intersection of McKinney and Carroll. Traffic can only turn

3

right to go northbound on Carroll at that intersection; traffic cannot go left, as a concrete barrier prevents a left turn. Additionally, warning signs on McKinney caution that only a right turn is allowed. Nevertheless, at the stop sign, the red car stopped in the left lane with its left-turn signal blinking. At that point, Officer Martin decided to initiate a stop.

In speaking with the driver, identified at trial as Appellant, Officer Martin noticed that his eyes were red and glassy, his speech was very slurred, and there was a strong odor of alcohol coming from him as he spoke. She asked Appellant if he had been drinking, and he responded that he had consumed two, three, or four eight-ounce draft beers. Officer Martin observed a beer in the driver's side cup holder. Appellant told her that it was his former passenger's. Officer Martin testified that when she asked Appellant to get out of the car, he used the car door to pull himself out and was unsteady for a moment. The video shows that he held on to the open door as he exited the car.

After ascertaining that Appellant had no physical handicaps, was not taking medication, and did not have epilepsy or diabetes, Officer Martin conducted an HGN test. She testified that she observed all six possible clues of intoxication. The defense expert challenged her administration of the test, but his challenge only pertained to two of the six clues.

4

After the HGN test, Officer Martin attempted to conduct the walk-and-turn test, but Appellant refused to continue after being unable to place his feet in a heel-toe position, claiming that he had an ankle problem. Appellant, who told the officer that he had some college education, was unable to successfully count backward from 56 to 23, and he refused to recite the alphabet from C to W. Officer Martin arrested Appellant for DWI.

The video shows that Appellant repeatedly talked or yelled belligerently while he was alone in the squad car, both during the officers' search of his car and later when his car was being delivered to the impound lot. At the jail, Appellant was read the statutory warning, and he refused to give a blood or breath sample.

Applying the appropriate standard of review,[4] we hold that the evidence is legally sufficient to support his conviction. We overrule Appellant's fourth issue.

In his fifth issue, Appellant contends that the evidence is factually insufficient to support his conviction. Applying the appropriate standard of

---

[4] *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (both providing standard for reviewing the legal sufficiency of the evidence).

review,[5] we hold that the evidence is factually sufficient to support his conviction. We overrule Appellant's fifth issue.

In his second issue, Appellant contends that the trial court erred by allowing improper impeachment of a defense witness. At trial, Appellant relied on *Shipman v. State*[6] in voicing his objections. But on appeal, Appellant relies instead on rule of evidence 613. Because Appellant's complaint on appeal does not comport with his complaint at trial, this issue is not preserved.[7] We overrule Appellant's second issue.

In his third issue, Appellant contends that he was denied his right to a speedy trial. We see no evidence in the record that Appellant ever raised this issue in the trial court. Because Appellant raises this issue for the first time on appeal, it is forfeited.[8] We overrule Appellant's third issue.

---

[5]... *See Steadman v. State*, 280 S.W.3d 242, 246–47 (Tex. Crim. App. 2009); *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 8–9, 12 (Tex. Crim. App. 2000) (all providing standard for reviewing the factual sufficiency of the evidence).

[6]... 604 S.W.2d 182 (Tex. Crim. App. 1980) (regarding erroneous admission of evidence of prior conviction as impeachment evidence at *guilt* phase).

[7]... *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

[8]... *See Mulder v. State*, 707 S.W.2d 908, 915 (Tex. Crim. App. 1986); *Berisha v. State*, No. 02-02-00417-CR, 2003 WL 22457058, at *1 (Tex. App.—Fort Worth Oct. 30, 2003, no pet.) (mem. op., not designated for

In his first issue, Appellant contends that the trial court erred by admitting during the punishment phase evidence about the extraneous offense of unadjudicated bail jumping. (The record shows that at trial on the DWI, Appellant had been indicted but not yet tried for bail jumping.) He contends that there was no evidence of the required mental state because there was no evidence that he had notice of the original trial setting for the DWI—October 17, 2007. He also contends that State's Exhibit 24, a certificate of call, was admitted over his hearsay and confrontation objections.

Section 38.10 of the penal code provides that "[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear[,] commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release."[9]

The evidence shows that trial was originally set for October 17, 2007. The State's investigator testified that Appellant did not appear on that date. The trial court admitted a certificate of call, found also in the clerk's record, indicating that the bailiff who had signed it had called three times for Appellant "at the doors of the Courthouse of [the trial] Court," but he had not answered or appeared. Appellant's bondsman testified that Appellant checked in regularly

publication).

[9] Tex. Penal Code Ann. § 38.10 (Vernon 2003).

7

from the time the bond was written until October 16 but not since then and that the bondsman had been unable to bring Appellant back into the trial court.

As proof of notice, the trial court admitted a letter addressed to Appellant informing him of the trial date, a certified copy of a reset form signed by Appellant and his attorney showing that the case had been set for jury trial on October 17, 2007, and testimony that Appellant still lived at the Dallas address to which the court's trial setting letter was directed.

The trial court also admitted a certified copy of the capias issued for Appellant's arrest based on his failure to appear on October 17.

The admissibility of evidence at punishment is guided largely by article 37.07, section 3 of the Texas Code of Criminal Procedure.[10] While the trial court makes a threshold determination of whether the jury could rationally find beyond a reasonable doubt that an offense or bad act was committed, the jury actually decides if the State met its burden of proof.[11] Further, article 37.07, section 3(a) does not require the State to necessarily prove that the act was a criminal act or that the defendant committed a crime.[12] Instead, before the jury

---

[10] *Haley v. State*, 173 S.W.3d 510, 513 (Tex. Crim. App. 2005); *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2009).

[11] *Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.).

[12] *Haley*, 173 S.W.3d at 515.

can consider the evidence in assessing punishment, it must believe beyond a reasonable doubt that the acts are attributable to the defendant.[13]

The trial court instructed the jury,

> You are instructed that if there is testimony before you in this case regarding the defendant having committed other acts or participated in other transactions other than the offense alleged against him in the indictment in this case, that you cannot consider such other acts or transactions, if any, unless you first find and believe beyond a reasonable doubt that the defendant committed such acts or participated in such transactions, if any, but if you do not so believe, or if you have a reasonable doubt thereof, you will not consider such testimony for any purpose.

Appellant has pointed to no evidence in the record that the jury disobeyed this instruction. Accordingly, we overrule Appellant's first subissue.

Regarding Appellant's subissue about the admissibility of State's Exhibit 24, we agree with the State that the Appellant's entire briefing on this subissue,

> Moreover, State's Exhibit 24 was admitted into evidence over the appellant's objections to right to confront and hearsay. (RR 6: 37–38). See *Crawford v. Washington*, 541 U.S. 36 (2004)[,]

is inadequate,[14] but we note in the interest of justice that Appellant did not

---

[13] ... *Id.*

[14] ... *See* Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001); *Mosley v. State*, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

object to the testimony about the exhibit. The State's investigator testified that

the exhibit is a certified certificate of call; that a certificate of call is

> a document that bailiffs or other court officers complete after they
> call the halls three times for a case, if a defendant is not present.
> Sometimes they'll just do one; sometimes they'll have a stack of
> 20, and you'll hear them in the hall of the courthouse call, John
> Smith, John Smith, John Smith, and wait for a response[;]

that, if there is no response, "[t]ypically, a warrant is issued for them, the

individual who failed to appear"; that the date on the certificate is October 17,

2007; that the investigator was in the courtroom on that day; that he knew the

bailiff who signed the exhibit; that the bailiff's name is Larry Murphree; and that

Murphree is and has been the "normal" bailiff in the trial court for one and a

half to two years. Because the State's investigator's testimony regarding the

exhibit came in without objection, the admission of the exhibit was harmless.[15]

Further, we note that Appellant does not contend on appeal that the State did

not prove his absence from court on October 17 but instead challenges only the

proof of whether such absence was intentional or knowing. We overrule the

remainder of Appellant's first issue.

---

[15] *... See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

Having overruled Appellant's five issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 11, 2010